```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| 1840 P. CHEESEMAN ROAD, LLC, and 1840 P. CHEESEMAN ROAD OPCO, LLC, | 1:16-cv-01680-NLH-KMW |
| | OPINION |
| Plaintiffs, | |
| v. | |
| TOWNSHIP OF GLOUCESTER ZONING BOARD OF ADJUSTMENT and TOWNSHIP OF GLOUCESTER, | |
| Defendants. | |

**APPEARANCES**:

STEVEN M. COREN
EVAN B. COREN
DAVID MICHAEL DEVITO
KAUFMAN, COREN & RESS, P.C.
3900 TWO COMMERCE SQUARE
2001 MARKET STREET
PHILADELPHIA, PA 19103

JACK PLACKTER
FOX ROTHSCHILD LLP
1301 ATLANTIC AVENUE
MIDTOWN BUILDING
ATLANTIC CITY, NJ 08401

KEVIN HARRY MARINO
JOHN A. BOYLE
MARINO TORTORELLA & BOYLE PC
437 SOUTHERN BOULEVARD
CHATHAM, NJ 07928-1488
     On behalf of plaintiffs

RICHARD L. GOLDSTEIN
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300

```
CHERRY HILL, NJ 08002
     On behalf of defendant Township of Gloucester Zoning Board
     of Adjustment

VINCENT P. SARUBBI
DOUGLAS DIAZ
ARCHER & GREINER
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033
     On behalf of defendant Township of Gloucester
```

**HILLMAN, District Judge**

This case concerns what Plaintiffs deem to be a "NIMBY" matter – that the Defendants have systematically rejected Plaintiffs' efforts to build a cutting edge substance abuse treatment facility for unfounded and misguided "not in my backyard" reasons.  Presently before the Court is the motion of Defendants to dismiss several of Plaintiffs' claims.  For the reasons expressed below, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff 1840 P. Cheeseman Road, LLC ("1840 P., LLC"), is the owner of a parcel of property located on 1840 Peter Cheeseman Road, Blackwood, Township of Gloucester, County of Camden, State of New Jersey, Block 14003, Lot 13.  1840 P., LLC is affiliated with Recovery Centers of America Holdings, LLC, a for-profit organization committed to providing cutting edge treatment for drug and alcohol addiction in neighborhood-based residential treatment facilities around the country.  Plaintiff

1840 P. Cheeseman Road OPCO, LLC ("OPCO"), is affiliated with RCA, and is the operating company formed for the purpose of operating RCA's campus-like residential treatment facility in Blackwood, Gloucester Township, New Jersey.

Plaintiffs allege in their complaint the following.[1] Drug and alcohol abuse is wreaking havoc on public health and safety in communities across the United States, with drug overdose deaths now surpassing traffic accident deaths. On March 10, 2016, the United States Senate passed the Comprehensive Addiction and Recovery Act of 2016, which recognized the abuse of heroin and prescription opioid painkillers as having "a devastating effect on public health and safety in communities across the United States."

The overdose death rate in New Jersey is three times the national average, with Camden County (including Gloucester Township) accounting for the highest percentage of overdose deaths in New Jersey's twenty-one counties. Recognizing addiction's devastating effects, the New Jersey Legislature has declared: "[H]uman suffering and social and economic loss caused

---

[1] The factual contentions contained in this ruling are drawn from the Complaint. In keeping with the Court's duty to assume the veracity of the allegations contained in the Complaint when deciding the pending Motion to Dismiss, Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), any contradictory factual assertions on the part of Defendants have not been credited. The Court makes no finding on the veracity of the allegations.

3

by drug addiction are matters of grave concern to the people of the state and it is imperative that a comprehensive program be established and implemented through the facilities of the state, the several counties, the federal government, and local and private agencies to prevent drug addiction and to provide diagnosis, treatment, care, rehabilitation for drug addicts." N.J.S.A. 30:6C-1.

As affiliates of Recovery Centers of America, Plaintiffs' mission is to provide neighborhood-based recovery campuses for patients suffering from drug and alcohol addiction.  To fulfill that mission, Plaintiffs purchased a 150-acre parcel in Gloucester Township's Institutional Zone - a zone specifically designated for residential healthcare facilities, among other uses - and plan to construct and operate on the site residential healthcare facilities dedicated to treating drug and alcohol abuse.

According to Plaintiff, steeped in pretext, the Defendants, Township of Gloucester Board of Adjustment and Township of Gloucester, have thrown one illegal hurdle after another in Plaintiffs' path, thereby presenting "the familiar conflict between the legal principle of non-discrimination and the political principle of not-in-my-backyard."  Ignoring the plain language of the Township's Land Development Ordinance, which expressly states that residential healthcare facilities and

4

residential uses ancillary thereto are permitted uses in the Institutional Zone, the Defendants have illegally: (a) burdened Plaintiffs with seven days of unnecessary hearings before the Township's Zoning Board and Planning Board, (b) caused Plaintiffs to litigate against both Boards when they improperly denied Plaintiffs' previous applications, (c) required Plaintiffs to seek a use variance for a use that is expressly permitted under the governing ordinance, (d) denied Plaintiffs' use variance in a "kangaroo" proceeding that screamed pretext and discrimination (with the Defendant Board finding that Plaintiffs' four step-down inpatient residential treatment facilities did not qualify as residential healthcare facilities under the Ordinance because, in the Board's arbitrary and capricious view, they are "more of a residence than a treatment center"), and (e) denied Plaintiffs' preliminary site plan for the residential detoxification facility which it had already approved as a permitted use, thereby requiring Plaintiffs to start the entire application process anew, for a third time, based on a fictional jurisdictional deficit.

Having erected one improper procedural hurdle after another in service of its openly discriminatory objectives, the Plaintiff alleges, the Board has delayed life-saving treatment needed by Plaintiffs' prospective patients who reside in and around Gloucester Township, jeopardized Plaintiffs $8.8 million

5

investment in the project, and caused Plaintiffs to suffer substantial and continuing economic harm, including lost profits.

As a result of the alleged wrongdoing, Plaintiffs seek compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs, and assert claims under the Constitution of the United States, 42 U.S.C. § 1983, 42 U.S.C. § 12132 (the "Americans with Disabilities Act" or "ADA"), 42 U.S.C. § 3601 (the "Fair Housing Amendments Act" or "FHAA''), 29 U.S.C. § 791 (the "Rehabilitation Act" or "RA"), the Constitution of the State of New Jersey, the New Jersey Municipal Land Use Law, and N.J.S.A. 10:5-1 (the "New Jersey Law Against Discrimination" or "NJLAD").
(Complaint, Docket No. 1.)

While Defendants' motion to dismiss was pending, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendants "from persisting in their discriminatory conduct and directing them to issue the zoning approvals necessary to allow Plaintiffs to commence construction of Phase One of the proposed facility and renovate and expand the existing building on the property for use as a residential treatment facility for persons recovering from drug addiction and alcoholism." (Docket No. 27-1 at 9.)

Defendants' main objection to Plaintiffs' request for

injunctive relief was that Plaintiffs failed to exhaust their administrative remedies by returning to the Planning Board for approval of Phase One separate from Phase Two.  Plaintiffs had presented a single use variance application containing both phases, and it was concerns about Phase Two that was the primary roadblock to approval of the plan as a whole.

The Court held a hearing on Plaintiffs' motion for preliminary injunction on November 16, 2016.  At the conclusion of the hearing, the Court denied without prejudice Plaintiffs' motion, but ordered that the Zoning Board must consider and rule on Plaintiffs' Phase One Application on the merits at the Zoning Board's December 14, 2016 meeting.  (Docket No. 35.)

Defendants' motion to dismiss argues that Plaintiffs' entire case should be dismissed for the same reason that it argued Plaintiffs' motion for preliminary injunction should be denied – Plaintiffs' failure to exhaust their administrative remedies.  In light of the decision of Plaintiffs to submit Phase I to the Zoning Board and the Board's approval of that application, this aspect of Defendants' motion is moot.  (Docket No. 33.)

In addition to their exhaustion argument, Defendants have moved to dismiss several aspects of Plaintiffs' complaint.  They argue that (1) Plaintiffs have failed to state a claim against the Township separate from the Zoning Board; (2) OPCO, as the

7

operator of the facility rather than the property owner, lacks standing to pursue any claims; (3) Plaintiffs have failed to properly allege a viable Fourteenth Amendment procedural due process claim; and (4) Plaintiffs' request for punitive damages for their claims arising under federal law is prohibited. Plaintiffs have opposed Defendants' motion on all bases, except for the dismissal of their demand for punitive damages, which Plaintiffs concede the weight of authority bars recovery of punitive damages against a municipality for federal claims.[2] The Court will therefore address the three remaining arguments in Defendants' motion.

## DISCUSSION

### A. Subject matter jurisdiction

This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as

---

[2] Plaintiffs reserve "the right to reassert [punitive damages] should the legal landscape change during the course of this litigation." (Docket No. 19 at 29 n.9.)

true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for

9

the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig.,

114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### C. Analysis

#### 1. Whether Plaintiffs have failed to state a claim against the Township separate from the Zoning Board

Defendants argue that Plaintiffs' claims against the Township must be dismissed because the Township and its Zoning Board are legally distinct entities under New Jersey law, and Plaintiffs fail to allege, beyond a single bare-bone allegation,

11

how the Township is "responsible" for the purported wrongs by the Zoning Board.

In New Jersey, zoning boards are independent quasi-judicial administrative bodies, and their powers are authorized by statute. Endreson v. Dover Township Zoning Bd. of Adjustment, 2009 WL 1066053, at *5 (N.J. Super. Ct. App. Div. 2009) (citing Dolan v. DeCapua, 16 N.J. 599, 612, 109 A.2d 615 (1954); Duffcon Concrete Prods., Inc. v. Borough of Cresskill, 1 N.J. 509, 515-16, 64 A.2d 347 (1949)). Because of this, zoning boards are "entities independent of the governing body of the municipality." Lehrhaupt v. Flynn, 356 A.2d 35, 45 (N.J. Super. Ct. App. Div. 1976), aff'd, 383 A.2d 428 (N.J. 1978). Thus, it is clear that without any separate involvement with the events giving rise to a plaintiff's claims against a zoning board, a municipality cannot be held liable for the acts of the zoning board.

This proposition does not compel the dismissal of Plaintiffs' claims against Gloucester Township, however, because Plaintiffs have alleged wrongs perpetrated by the Township itself, separate from and in concert with the Zoning Board. Even though the bulk of the complaint focuses on the Zoning Board's actions, Plaintiffs have alleged discriminatory animus by at least one Township employee – the Township solicitor - who has been directly involved in the Zoning Board's deliberations

12

and decisions.[3]  For example, in one public hearing, the Township's solicitor "mused out loud that RCA would attract violent offenders to the community," and that "'one of the problems with addicts is they lie . . . almost to the point where you believe them.'"  (Compl. ¶ 34.)  The complaint contains several other allegations concerning the solicitor's alleged discriminatory animus.  (Compl. ¶¶ 68, 75, 87, 123, 124, 146.)

Thus, Plaintiffs have alleged sufficient facts that suggest, if proven, the Township and its Zoning Board were both motivated to prevent Plaintiffs' addiction treatment facility from being in its "backyard" for discriminatory reasons.  The Township shall remain in the case at this stage in the litigation.

> 2. **Whether OPCO, as the operator of the facility rather than the property owner, lacks standing to pursue any claims**

Defendants argue that the entity – OPCO - which will operate the treatment facility on the property owned by 1840 P. Cheeseman Road, LLC, does not have standing to assert the claims in the complaint because it holds no interest in the property.

---

[3] A board of adjustment attorney is appointed by the members of the zoning board, but that appointment "makes him no less an officer or employee of the municipality which has created his position and compensates him for his services." Lehrhaupt v. Flynn, 356 A.2d 35, 45 (N.J. Super. Ct. App. 1976), aff'd, 383 A.2d 428 (N.J. 1978).

13

The Court rejects this narrow proposition when considering Plaintiffs' claims in the context of entire complaint.

"The essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a personal stake in the outcome of the controversy (as) to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 260-61 (1977) (internal quotations and citations omitted). "The plaintiff must show that he himself is injured by the challenged action of the defendant." Id. "The injury may be indirect, but the complaint must indicate that the injury is indeed fairly traceable to the defendant's acts or omissions." Id. (citation omitted).

The Arlington Heights case is on point with the one here. Metropolitan Housing Development Corporation (MHDC) applied to the Village of Arlington Heights for the rezoning of a 15-acre parcel from single-family to multiple-family classification. MHDC planned to build 190 townhouse units for low- and moderate-income tenants using federal financial assistance. The Village denied the rezoning request, and MHDC brought suit in federal court alleging that the denial was racially discriminatory and that it violated, *inter alia*, the Fourteenth Amendment and the Fair Housing Act. Village of Arlington Heights, 429 U.S. at

14

254.

The Village argued that MHDC lacked standing because it could not suffer any economic injury since it was not the owner of the property, its contract of purchase was contingent upon securing rezoning, and MHDC owed the owners nothing if rezoning was denied.  Id.  The Supreme Court rejected that argument:

> [I]t is inaccurate to say that MHDC suffers no economic injury from a refusal to rezone, despite the contingency provisions in its contract.  MHDC has expended thousands of dollars on the plans for Lincoln Green and on the studies submitted to the Village in support of the petition for rezoning.  Unless rezoning is granted, many of these plans and studies will be worthless even if MHDC finds another site at an equally attractive price.

Id.

Moreover, the Supreme Court noted that economic injury is not the only kind of injury that can support a plaintiff's standing.  Id. at 262-63.  MHDC was a nonprofit corporation with an interest in making suitable low-cost housing available in areas where such housing is scarce, which "is not mere abstract concern about a problem of general interest." Id. at 263 (citation omitted).  "The specific project MHDC intends to build, whether or not it will generate profits, provides that essential dimension of specificity that informs judicial decisionmaking." Id.  The Supreme Court found that MHDC had standing to assert its own rights, "[f]oremost among them is MHDC's right to be free of arbitrary or irrational zoning

15

actions." Id. (citations omitted).

OPCO has alleged the same injuries in its complaint. Even though OPCO does not aver that it has an ownership interest in the property, as the operator of the facility, it claims that it has expended, along with 1840 P. Cheeseman Road LLC, almost $9 million for the project, including almost $2 million in design and preconstruction activities separate from the $6.7 to purchase the property. OPCO's investment in the project would become worthless, just as MHDC's investment in Arlington Heights, if Defendants' alleged discriminatory actions prevented the project to go forward. OPCO's alleged injuries incurred from a violation of its right to be free of arbitrary or irrational zoning actions is as concrete as property-owner 1840 P. Cheeseman Road LLC's.[4]  Accordingly, OPCO meets the

---

[4] Defendants argue that Arlington Heights is distinguishable because MHDC entered into a 99-year lease with the property owner, thus establishing its ties to the property to confer standing. The Court does not find that the Supreme Court's analysis of MHDC's standing to have hinged on – or was even in minor consideration of – that fact, especially because MHDC would be absolved of its lease and contract to purchase the property if the zoning board denied its application. See Village of Arlington Heights, 429 U.S. at 256 ("MHDC and the Order entered into a 99-year lease and an accompanying agreement of sale covering a 15-acre site in the southeast corner of the Viatorian property. MHDC became the lessee immediately, but the sale agreement was contingent upon MHDC's securing zoning clearances from the Village and s 236 housing assistance from the Federal Government. If MHDC proved unsuccessful in securing either, both the lease and the contract of sale would lapse."). Indeed, it was because of the lack of property interest that the Village argued MDHC lacked standing, which proposition the

constitutional standing requirements to permit its claims to proceed.[5]

### 3. Whether Plaintiffs have failed to properly allege a viable Fourteenth Amendment procedural due process claim in Count Four

Defendants argue that Plaintiffs' count brought pursuant to 42 U.S.C. § 1983 for violations of their procedural due process rights under the Fourteenth Amendment must be dismissed because adequate post-deprivation remedies for Plaintiffs' claims are provided under New Jersey law.

To plead a violation of procedural due process rights under the Fourteenth Amendment, a plaintiff "must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process." DeBlasio v. Zoning Bd. of Adjustment for Tp. of West Amwell, 53 F.3d 592, 597 (3d Cir. 1995) abrogated on other grounds by United Artists Theatre

---

Supreme Court squarely rejected.

[5] The prudential requirement of standing is in contrast to a constitutional substantive due process violation claim, which requires that a plaintiff must establish a property interest in order to proceed with such a claim. See Selig v. North Whitehall Township Zoning Hearing Board, 653 Fed. Appx. 155, 157 (3d Cir. 2016) (citing DeBlasio v. Zoning Bd. of Adjustment for Tp. of West Amwell, 53 F.3d 592, 597 (3d Cir. 1995) abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 401 (3d Cir. 2003)) ("We are not aware of any case in which we have found that something other than full property ownership warrants substantive due process protection."). Thus, only 1840 P. Cheeseman Road, LLC would have standing to assert a substantive due process claim if it chose to lodge such a claim.

17

Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 401 (3d Cir. 2003).  A state furnishes constitutionally adequate procedural due process when it provides reasonable remedies to correct a legal error by a local administrative body.  John E. Long, Inc. v. Borough of Ringwood, 61 F. Supp. 2d 273, 278-79 (D.N.J. 1998), aff'd 213 F.3d 628 (3d Cir. 2000) (citations omitted).

The State of New Jersey provides a full judicial mechanism for challenging adverse zoning decisions:

> New Jersey statutes provide that a Zoning Board of Adjustment ("ZBA") has the power to decide appeals of the zoning officer's enforcement of a municipality's zoning ordinance and to decide requests for an interpretation of the zoning law. N.J.S.A. 40:55D-70(a) and (b). Additionally, the ZBA has the power to grant a request for a variance or other relief so long as it is not a substantial detriment to the public good and it will not substantially impair the intent and purpose of the zoning ordinance. Id. 40:55D-70(c) and (d).  Moreover, New Jersey allows any interested party affected by any decision of an administrative officer of the municipality based upon or made in the enforcement of the zoning ordinances or official map to make an appeal to the ZBA. Id. 40:55D-72(a).  Finally, pursuant to Rule 4:69-1 et seq. of the New Jersey Court Rules, [a plaintiff is] entitled to a review, a hearing, and relief by filing a complaint in the New Jersey Superior Court, Law Division, before the expiration of forty-five days from the time [the plaintiff] receive[s] notice that [its] application for rezoning ha[s] been denied. R. 4:69-1 et seq.

Id. (citing DeBlasio, 53 F.3d at 597).

These procedures repeatedly have been found to be constitutionally adequate, and require the dismissal of a plaintiff's procedural due process claim, even if a plaintiff

18

fails to take advantage of the adequate process available to it. See id.; see also Trotta v. Borough of Bogota, 2016 WL 3265689, at *9-10 (D.N.J. 2016) (same) (citing DeBlasio and other cases); Strategic Environmental Partners, LLC v. Bucco, 2016 WL 2348608, at *12 (D.N.J. 2016) (citing DeBlasio for the proposition that when a party has access to full judicial process in which it may challenge the administrative decision in question, the state has provided adequate procedural due process).

Therefore, because the procedures set forth by N.J. Ct. R. 4:59-1 to -7 were and are available to Plaintiffs, their procedural due process claim must be dismissed.

## CONCLUSION

For the reasons expressed above, Plaintiffs' request for punitive damages for their federal claims and Plaintiffs' count for procedural due process violations must be dismissed. All other claims may proceed against both Defendants.

An appropriate Order will be entered.


Date: __December 16, 2016__          __s/ Noel L. Hillman___
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.